UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case Number: 1:18-CV-21733-UU

SALOMON CONSTRUCTION AND
ROOFING CORP., a Florida corporation,

    Plaintiff,

v.

JAMES McHUGH CONSTRUCTION CO.,
a foreign corporation, and TRAVELERS
CASUALTY AND SURETY COMPANY
OF AMERICA, a foreign corporation,

    Defendants.
_____/

JAMES McHUGH CONSTRUCTION CO.,
a foreign corporation,

    Counter-Plaintiff

v.

SALOMON CONSTRUCTION AND
ROOFING CORP., a Florida corporation,
and WEST CHESTER FIRE INSURANCE
COMPANY,

    Counter-Defendants
_____/

**DEFENDANT/COUNTER-PLAINTIFF JAMES MCHUGH CONSTRUCTION CO.'S
PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

    COMES NOW the Defendant, JAMES McHUGH CONSTRUCTION CO. by and through

its undersigned counsel, and submits its attached Findings of Fact and Conclusions of Law as to

Non-Jury Trial on Plaintiff's Complaint and Counter-Plaintiff's Second Amended Counterclaim.

BECKER & POLIAKOFF, P.A.
1 East Broward Blvd., Suite 1800
Ft. Lauderdale, FL  33301
Telephone:  (954) 985-4147
Facsimile:  (954) 985-4176
Primary Email: lweintraub@beckerlawyers.com
Secondary Emails: tfritz@beckerlawyers.com
ftlefile@beckerlawyers.com

By:  /s/
Lee A. Weintraub, Esq.
Florida Bar No. 940704

and

Aaron J. Pruss, Esq.
Florida Bar No. 15656
BECKER & POLIAKOFF, P.A.
Six Mile Corporate Park
12140 Carissa Commerce Court, Suite 200
Fort Myers, FL  33966
Telephone:  (239) 433-7707
Facsimile:  (239) 433-5933
Primary Email: apruss@beckerlawyers.com
Secondary Emails: mlsmith@beckerlawyers.com
ftmefile@beckerlawyers.com
*Attorneys for Defendants, McHugh and Travelers*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 25, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

BECKER & POLIAKOFF, P.A.
1 East Broward Blvd., Suite 1800
Ft. Lauderdale, FL  33301
Telephone:  (954) 985-4147
Facsimile:  (954) 985-4176
Primary Email: lweintraub@beckerlawyers.com
Secondary Emails: tfritz@beckerlawyers.com
ftlefile@beckerlawyers.com

By: /s/
Lee A. Weintraub, Esq.
Florida Bar No. 940704

and

Aaron J. Pruss, Esq.
Florida Bar No. 15656
BECKER & POLIAKOFF, P.A.
Six Mile Corporate Park
12140 Carissa Commerce Court, Suite 200
Fort Myers, FL  33966
Telephone:  (239) 433-7707
Facsimile:  (239) 433-5933
Primary Email: apruss@beckerlawyers.com
Secondary Emails: mlsmith@beckerlawyers.com
ftmefile@beckerlawyers.com

*Attorneys for Defendants, McHugh and Travelers*

**SERVICE LIST**

| | |
|---|---|
| Stuart H. Sobel, Esq.<br>Daniel Jovanov, Esq.<br>Siegfried, Rivera, Hyman, Lerner,<br> De La Torre, Mars & Sobel, P.A.<br>201 Alhambra Circle, 11th Floor<br>Coral Gables, FL  33134<br>ssobel@srhl-law.com<br>mness@srhl-law.com<br>djovanov@srhl-law.com<br>dbrady@srhl-law.com<br>acctefile@srhl-law.com<br>*Attorneys for Plaintiff Salomon* | Alexander L. Wildman, Esq.<br>Jorge L. Cruz, Esq.<br>Daniels, Rodriguez, Berkeley,<br> Daniels & Cruz, P.A.<br>4000 Ponce De Leon Blvd., Suite 800<br>Coral Gables, FL  33146<br>jcruz@drbdc-law.com<br>service-JLC@drbdc-law.com<br>tcruz@drbdc-law.com<br>awildman@drbdc-law.com<br>service-alw@drbdc-law.com<br>eligonzalez@drbdc-law.com<br>*Attorneys for Counter-Defendant Salomon* |
| Philip J. Siegel, Esq.<br>Edward A. Stone, Esq.<br>Hendrick Phillips Salzman & Siegel, PC<br>230 Peachtree Street NW, Suite 2500<br>Atlanta, GA  30309-1515<br>pjs@hhpsslaw.com<br>eas@hpsslaw.com<br>*Attorneys for Westchester Fire Insurance Company* | |

ACTIVE: 11902617_1

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case Number:  1:18-CV-21733-UU

SALOMON CONSTRUCTION AND ROOFING CORP., a Florida corporation,

    Plaintiff,

v.

JAMES McHUGH CONSTRUCTION CO., a foreign corporation, and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a foreign corporation,

    Defendants.
_____/

JAMES McHUGH CONSTRUCTION CO., a foreign corporation,

    Counter-Plaintiff,

v.

SALOMON CONSTRUCTION AND ROOFING CORP., a Florida corporation, and WESTCHESTER FIRE INSURANCE COMPANY, a foreign corporation,

    Counter-Defendants.
_____/

**COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW AS TO NON-JURY TRIAL ON PLAINTIFF'S COMPLAINT AND COUNTER-PLAINTIFF'S SECOND AMENDED COUNTERCLAIM**

CASE NO: 1:18-CV-21733-UU

THIS CASE came before the Court for a non-jury trial on March ____ - ____, 2019 on (1) the Complaint filed in State Court on March 29, 2018 by the Plaintiff, SALOMON CONSTRUCTION AND ROOFING CORP. (hereinafter "SALOMON"), and which was thereafter removed to this Court (hereinafter "Complaint") by the Defendants, JAMES McHUGH CONSTRUCTION CO. (hereinafter "McHUGH") and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA (hereinafter "TRAVELERS"), and 2) McHUGH's Second Amended Counterclaim dated January 3, 2019 [D.E. 071] (hereinafter "Second Amended Counterclaim") against SALOMON and WESTCHESTER FIRE INSURANCE COMPANY (hereinafter "WESTCHESTER"), and the parties' respective answers and affirmative defenses thereto.

The Court has considered the Complaint and Second Amended Counterclaim, together with the relevant portions of the court file; has heard the testimony presented by the parties and other witnesses; has had the opportunity to observe the demeanor of each witness and assess each witness' credibility; has reviewed the documentary evidence admitted as exhibits; has heard arguments of counsel; has reviewed the parties' written submissions; and has considered the applicable statutory law, rules of procedure and case law.  Based on the foregoing, the Court makes the findings of fact and conclusions of law detailed below as to the claims asserted by SALOMON in its Complaint, by McHUGH in its Second Amended Counterclaim, and the affirmative defenses asserted in response to each of those pleadings by the respective Defendants and Counterdefendants.

1. **<u>Relevant Procedural History of Case.</u>**   SALOMON's original Complaint was filed in the Eleventh Judicial Circuit Court, In and For Miami-Dade County, Florida on March 29, 2018.  Count I was for breach of contract against McHUGH seeking the sum of $99,972.10 for alleged non-payment for roofing and waterproofing work performed on the construction of the Miami Midtown 5 apartment project in Miami, Florida.  Count II was for

2

CASE NO: 1:18-CV-21733-UU

unjust enrichment against McHUGH arising out of the alleged nonpayment for SALOMON's work. Count III was a claim against a statutory payment bond provided pursuant to section 713.23, Fla. Stats., by McHUGH and TRAVELERS, in which SALOMON sought the same amount of $99,972.10 against the bond. McHUGH and TRAVELERS filed an answer [D.E. 006], in which they denied the allegations of the Complaint, denied any liability to SALOMON, and raised various affirmative defenses. McHUGH also filed a Counterclaim against SALOMON and WESTCHESTER. McHUGH alleged that SALOMON's work was defective, requiring repair and replacement by McHUGH, for which McHUGH sought an amount of damages that was unspecified in the Counterclaim. Count I was a claim against SALOMON for breach of contract, Count II was a claim against SALOMON for violation of the Florida Building Code under section 553.84, Fla. Stats., Count III was a claim against WESTCHESTER under a common law performance bond WESTCHESTER and SALOMON provided to McHUGH on the project, and Count IV was against WESTCHESTER under a common law payment bond WESTCHESTER and SALOMON provided to McHUGH on the project.

SALOMON moved to dismiss the Counterclaim [D.E. 016] alleging McHUGH failed to attach the relevant contract to the Counterclaim or allege what provisions of the contract were allegedly breached by SALOMON. On June 13, 2018, the parties submitted an agreed order to the Court [D.E. 020] agreeing to grant the Motion to Dismiss and allowing McHUGH to file an amended counterclaim. The Court granted the Motion accordingly on June 18, 2018. [D.E. 022] McHUGH filed its Amended Counterclaim on June 18, 2018. [D.E. 023]

To avoid SALOMON's *Fabre* defense to the Amended Counterclaim, McHUGH filed a Motion to amend its Amended Counterclaim to remove its claim for violation of the Florida Building Code in Count II against SALOMON. [D.E. 066] The Court granted the Motion [D.E. 070] and McHUGH filed its Second Amended Counterclaim removing Count II. [D.E. 071] The rest of the claims remained; to wit, breach of contract against SALOMON and claims

3

CASE NO: 1:18-CV-21733-UU

against the performance and payment bonds against WESTCHESTER.

2. **Proposed Findings of Fact**. The Court finds the following facts to have been established by substantial competent evidence or otherwise were stipulated to by the parties:

a. ***SALOMON's Was Paid Almost All of Its Contract Balance*** - McHUGH, as the general contractor on the Miami Midtown 5 apartment building project, subcontracted with SALOMON, as subcontractor, for the installation of the original roof at Miami Midtown 5. The base Contract Sum was $301,342.00. McHUGH and SALOMON executed three Change Orders (#1-3) in the aggregate amount of $448,499.00, resulting in an undisputed Adjusted Contract Sum of $749,841.00. McHUGH presented SALOMON with two deductive Change Orders (#4-5), reducing the Adjusted Contract Sum by $48,910.54 (#4) and $13,996.00 (#5), respectively. The nature of the deductive change orders was for costs incurred as a result of deficient waterproofing work on the amenity deck, clean up and credits for work not performed (temporary roof) and an unused allowance. The deductive change orders resulted in a final Adjusted Contract Sum of $686,934.46 according to McHUGH. SALOMON refused to sign Change Orders #4 and #5, however the Court finds the Change Orders to be valid. McHUGH paid SALOMON $670,356.90 for work performed, leaving an unpaid contract balance of $16,577.56.

b. ***SALOMON's Work Was Defectively Performed*** - SALOMON did not perform the Subcontract work in a good and proper manner, as a direct result the roof at Miami Midtown 5 was installed defectively and failed. Water infiltrated the original roof SALOMON installed. Additionally, Miami-Dade County Notice of Acceptance No.: 15-0203.21 (hereinafter "NOA"), a required product approval issued for the roof system and governing its installation requirements, applies to the original roof SALOMON installed. The NOA required the second and third layers of tapered roofing insulation be attached by fully mopped asphalt. SALOMON instead attached the second and third layers of tapered insulation with Olybond foam adhesive, an entirely different product that both Jorge Urritia, the Private Inspector (MTCI) upon whom SALOMON relies to substantiate the completion of the roof, and SALOMON's own expert witness, Richard Vivenzio, testified that application did not meet the NOA's requirements, causing the roof to be non-compliant. The Court heard testimony that such non-compliance requires the replacement of the roof even if water had not infiltrated the system. The Court finds that SALOMON additionally failed to comply with the manufacturer's installation requirements by 1) failing to apply sealant at the lower termination bars, 2) failing to install continuous termination bars, and 3) failing to apply Everguard TPO Cut Edge sealant to all cut reinforced TPO roof membrane edges, all of which are required by the manufacturer, GAF.

SALOMON's attempts to explain the roof's failure and source of water intrusion were unavailing. SALOMON claimed water entered the system because McHUGH failed to apply sealant to the exterior of the roof parapet scuppers. However, no credible evidence was presented that water traveled through the scuppers, down the parapet and into the roof system.

4

CASE NO: 1:18-CV-21733-UU

The Court is unpersuaded that the roof was damaged by water entering through penetrations in the roof membrane because the samples removed from the roof showed water at the top of the system; i.e., on the top membrane and top layer of insulation, but the lower layers of insulation showed no evidence of water infiltration through the insulation board. Hence, there is no way water could have traveled from tears in the roof membrane through all layers of insulation and down to the deck beneath the roof insulation. Finally, the Court is unpersuaded that water could have entered the roof from the concrete block walls of the rooftop mechanical room because McHUGH promptly sealed and waterproofed those walls after installation and any water that could have entered through those walls would have channeled out onto the top of the roof, rather than under the roof, when the water hit the concrete curb on which the walls were set. Additionally, the location of the mechanical room does not suggest a sufficient volume of water could have spread through the entire field of the roof and caused such widespread failure. The Court is more persuaded that SALOMON's failures to comply with installation requirements of the manufacturer, including leaving unsealed termination bars exposed to weather for an extended period of time, were more likely the causes of the water intrusion. Regardless, as stated above, SALOMON's failure to comply with the NOA required removal and replacement of the roof regardless of any water intrusion.

In assessing the credibility of competing experts in this case, the Court notes neither SALOMON nor any of its experts performed any independent testing of the roof, following the discovery of water in the system, to determine the cause of water entry. Neither SALOMON nor any of its experts performed any independent testing of the roof scuppers to determine whether the scuppers were a source of water infiltration into the roofing system as SALOMON claimed in this matter. Neither SALOMON nor any of its experts performed any independent testing or analysis of any punctures or holes in the roofing membrane to determine whether those breaches were a source of water intrusion into the roofing system. In fact, importantly, neither of SALOMON's testifying expert witnesses ever saw either the original or the replacement roofs or indeed ever even visited the project about which they offered purported expert opinions. McHUGH's position, on the other hand, was supported by expert analysis, observations and conclusions that the Court accepts as persuasive.

SALOMON's aforesaid defects allowed water to enter the roof system, loosen the attachment of the roof from the underlying concrete deck and caused the roof to be unable to meet the wind uplift requirements of the NOA, rendering the installation defective and requiring a complete replacement.

SALOMON refused to install a replacement roof, requiring McHUGH to replace the roof. McHUGH did not accept the work performed by SALOMON and had to pay a replacement contractor, Hi-Rise Commercial Roofing, Inc., $612,961.00 to demolish and replace SALOMON's defective roof. McHUGH incurred additional costs and damages as a result of Salomon's defective work totaling $503,477.16 delineated as follows:

5

CASE NO: 1:18-CV-21733-UU

| McHugh General Conditions: | $331,941.62 |
|---|---|
| Consulting: | $127,469.33 |
| Subcontractor Costs: | $44,066.21 |

In addition to these costs incurred, McHUGH is contractually entitled to a 10% Management fee in the amount of $111,643.82. The total damages incurred by McHUGH are $1,228,081.98.

   c. ***The Replacement Roof Did Not Constitute a Betterment That Would Deprive McHugh of Recovery*** - Contrary to SALOMON's position, the Court does not find that the replacement roof, although not identical to the initial installed roof, constituted a betterment. A betterment occurs when a claimant seeks to recover from a respondent the cost for replacing a defective product or system with one superior to the product or system originally installed. Betterment only occurs a claiming party seeks to recover more than what was agreed to be provided pursuant to the contract that was breached. The Court does not find that the replacement roof constituted a betterment for a number of reasons. First, the replacement roof is not designed to withstand wind pressures as high as the originally installed roof. The maximum design pressure for the original roof SALOMON installed was -502.5psf, whereas the maximum design pressure for the replacement roof installed by Hi-Rise was only -375psf. Furthermore, even the cost of the new roof was not higher than that of the original roof. As stated above, the final Adjusted Contract Sum SALOMON charged for installing the original roof was $686,934.46, which included waterproofing. The cost of the original roof system installed by SALOMON was approximately $400,000.00 (including change orders for the 25th and 26th story roofs) whereas the cost of installing the replacement roof was only $301,840.00 (much of Hi-Rise Commercial Roofing Co.'s costs related to temporary roofing and mobilization). The cost of the actual replacement roofing system is less than the original system installed. Further, SALOMON did not present any evidence that it would have been cheaper to replace the original roof with an identical replacement roof than what McHUGH paid for the actual replacement roof. For these reasons, SALOMON failed to meet its burden of proof in establishing the defense of betterment.

   d. ***SALOMON Released Most of Its Claim Against TRAVELERS*** – As mentioned above, McHUGH paid SALOMON its entire final Adjusted Contract Sum less a remaining balance of $16,577.56. As part of every payment request, SALOMON provided to McHUGH unconditional releases of all lien claims for the period of work covered by each payment request. Collectively, SALOMON provided to McHUGH, in exchange for payment, unconditional releases of lien for all work performed through October 31, 2016 in an aggregate amount of $670,356.90.

   e. ***SALOMON's Notice of Nonpayment to TRAVELERS Was Untimely*** – SALOMON completed all of its work, other than final testing, inspections and issuance of a warranty by October 31, 2016 according to its last Application for Payment 5 (Revised) dated November 4, 2016. On December 8, 2016, MTCI, the project owner's private inspector, issued a Final Inspection Report dated December 8, 2016 noting the roof was "Approved." The City of Miami Building Department, the authority having jurisdiction who issued the roofing permit on

6

the project, finalized and passed all required roof inspections by December 14, 2016.  There clearly could not have been any required contract work remaining to be done by SALOMON after December 14, 2016, other than remedial and/or punch-list work.  SALOMON's payment bond claim was brought pursuant to section 713.23, Fla. Stats.  A condition precedent to recovery under the bond is the service of a written Notice of Non-Payment upon McHUGH and TRAVELERS not later than 90 days after the final furnishing of labor, services, or materials by the lienor.  §713.23(1)(d), Fla. Stats. SALOMON did not serve its Notice of Non-Payment upon McHUGH and TRAVELERS until June 12, 2017, nearly six months after its final furnishing of labor, services, or materials.

SALOMON contends its claim against the payment bond is predicated upon SALOMON's claim of lien recorded against the property, which McHUGH subsequently transferred to the payment bond by recording a Notice of Bond in the Public Records of Miami-Dade County, Florida pursuant to section 713.23(2), Fla. Stats.  However, its Claim of Lien was also untimely recorded.  A claim of lien may not be recorded later than 90 days after the final furnishing of the labor, services or materials by the lienor.  §713.08(5), Fla. Stats.  SALOMON recorded its claim of lien on April 18, 2017, four months after completion of its work and therefore, regardless of whether SALOMON is pursuing a claim of lien transferred to a payment bond or a direct claim against the payment bond itself irrespective of the lien, SALOMON's claim is barred as untimely.

   f. ***McHUGH Is Entitled To Recover Against The Performance Bond And Payment Bond Issued by WESTCHESTER*** - Westchester issued a Performance Bond and a Payment Bond in accordance with SALOMON's contractual requirements to McHUGH.  Both bonds secured the performance of SALOMON's work in different ways.  The performance bond provides that WESTCHESTER shall be liable for all expenses McHUGH, as obligee, may incur to complete SALOMON's work in the event SALOMON was defaulted in its performance. SALOMON and WESTCHESTER do not deny the scope of the performance bond covers McHUGH's claim, although they contest the merits of McHUGH's contention that SALOMON defaulted under its contract with McHUGH.

The payment bond provides that WESTCHESTER shall pay all persons, including McHUGH as obligee, supplying labor and material in the prosecution of SALOMON's work. SALOMON and WESTCHESTER dispute that the scope of the payment bond covers McHUGH's claim, even if McHUGH prevailed on the merits thereof.  SALOMON and WESTCHESTER contend a typical payment bond covers lienors, as that term is defined by the Florida Construction Lien Law; to wit, subcontractors, subsubcontractors, laborers and suppliers.  However, SALOMON and WESTCHESTER are relying upon payment bonds provided pursuant to the Florida Construction Lien Law under section 713.23.  This is not such a bond, as section 713.23 only addresses bonds issued by contractors, not subcontractors like SALOMON.  Bonds issued by subcontractors are not addressed by the Florida Statutes and are called common law bonds, as opposed to statutory bonds.  Common law bonds are governed by their terms rather than by any statute.  A payment bond is construed according to contract principles and in favor of granting the broadest possible coverage.  Generally, a payment bond is a "common law bond"

7

CASE NO: 1:18-CV-21733-UU

if it provides more expansive coverage than that provided by statute and any ambiguity as to the nature of the bond should be construed against the surety.

The payment bond at issue states, in part, "THE CONDITION OF THIS OBLIGATION IS SUCH, that if the Principal shall promptly *make payment to all persons supplying labor and material in the prosecution of the work provided for in said Subcontract* and any and all modifications of said Subcontract that may hereafter be made, then this obligation shall be null and void, otherwise it shall remain in full force and effect." [emphasis added]  It further states that it "shall inure to the benefit of all persons supplying labor and material in the prosecution of the work provided for in said Subcontract, *as well as to the Obligee*, and that such persons may maintain independent actions upon this Bond in their own names." [emphasis added]  The Court finds that McHUGH incurred costs in completing, and hence prosecuting the work of SALOMON's subcontract and is therefore entitled to recover its principal amount of damages from the payment bond up to its penal sum.  The Court cannot think of any other circumstance by which McHUGH, as obligee expressly authorized by the bond language to maintain an action upon the bond in McHUGH's own name, could have any claim against the bond if it was interpreted as SALOMON and WESTCHESTER suggest – that only sub-subcontractors, laborers and suppliers could recover against the bond.  To give the language of the bond its intended meaning, the Court finds that McHUGH may recover against both the performance bond and the payment bond the principal amount of its damages up to the penal sum of each bond.  Westchester failed to perform its obligations under either bond.

   3.   **Proposed Conclusions of Law.**   The Court makes the following conclusions of law as to the competing claims before it.

   a.   *SALOMON's Complaint – Count I for Breach of Contract.*  SALOMON's subcontract required it to, among other things, provide a roof that was merchantable, fit and free from defects and able to function for the particular purpose it was intended; required it to make, or cause to be made, corrections to its portion of work requiring remediation; required it to install the roof in compliance with the Contract Documents, manufacturers specifications and all applicable codes.  SALOMON failed to perform in accordance with these provisions, entitling McHUGH to damages for the removal and replacement of the roof.  The measure of damages to which McHUGH is entitled is the cost of correcting and completing SALOMON's work, less the amount of the remaining undisbursed contract price that would otherwise have been due to SALOMON.  *Grossman Holdings Ltd. v. Hourihan*, 414 So.2d 1037 (Fla. 1982).  Based upon the evidence received, McHUGH's cost to correct and complete SALOMON's work was $1,228,081.98 and the amount of the undisbursed contract balance was $16,577.56, resulting in a damage award to McHUGH in the amount of $1,211,504.42.  McHUGH is further entitled to recover attorney's fees from SALOMON pursuant to section 18.5 of the parties' subcontract.

   b.   *SALOMON's Complaint – Count II for Unjust Enrichment.*  The claim of unjust enrichment is based on the same occurrence as the claim for breach of contract, giving SALOMON an adequate remedy at law, barring them from pursuing an equitable claim like

8

CASE NO:  1:18-CV-21733-UU

unjust enrichment.  SALOMON cannot pursue a quasi-equitable claim for unjust enrichment if an express contract exists concerning the same subject matter. *Samana Inc. v. Lucena*, 156 F.Supp.3d 1373 (S.D.Fla. 2016)

Additionally, the elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepted and retained the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff.  *Peoples Nat'l. Bank of Commerce v. First Union Nat'l. Bank of Fla.,* 667 So.2d 876, 879 (Fla. 3d DCA 1996).

Given the circumstances which were the subject of the evidence at trial, SALOMON failed to meet the third element of a claim for unjust enrichment – "the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff."  To the contrary, granting SALOMON's claim for unjust enrichment would be inequitable.  The circumstances supporting the inequity of requiring McHUGH to pay SALOMON are founded upon SALOMON's breaches of contract requiring McHUGH to pay to remediate and replace SALOMON's defective work.  Accordingly, SALOMON failed to meet its burden as to Count II of the Complaint.

c. ***SALOMON's Complaint – Count III for Payment Bond Claim***. SALOMON's claim against TRAVELERS and McHUGH on the payment bond fails for two reasons.  First, as referenced above, SALOMON failed on its burden to show entitlement to any payment from McHUGH that could be secured by the payment bond.  Second, SALOMON's claim of lien that was transferred to the payment bond was not timely recorded and hence is unenforceable.  *Mursten Construction Company, et al v. C.E.S. Industries, Inc.*, 588 So.2d 1061, 1062-1063 (Fla. 3d DCA 1991).  Accordingly, SALOMON failed to meet its burden as to Count III of the Complaint and McHUGH and TRAVELERS are entitled to an award of attorney's fees pursuant to section 713.29, Fla. Stats.

d. ***McHUGH's Second Amended Counterclaim – Count I for Breach of Contract.***  For the reasons stated above, McHUGH is entitled to recover on its claim for breach of contract.  McHUGH is further entitled to recover attorney's fees from SALOMON pursuant to section 18.5 of the parties' subcontract.

e. ***McHUGH's Second Amended Counterclaim – Count II for Performance Bond Claim.***  For the reasons stated above, McHUGH is found to be a proper claimant against the performance bond, the claim is within the scope of the bond, and McHUGH met its burden as to Count II for performance bond claim.  McHUGH is entitled to recover the principal amount of its claim against WESTCHESTER's performance bond up to the $301,342.00 penal sum of the bond, plus interest, attorney's fees and costs, even to the extent they exceed the penal sum of the bond.  *David Boland, Inc. v. Trans Coastal Roofing Co.*, 851 So. 2d 724, 726 (Fla. 2003); *Old Republic Sur. Co. v. Reischmann*, 713 So. 2d 434, 436 (Fla. 2d DCA 1998). Attorney's fees are awarded pursuant to sections 713.29, 627.428 and 627.756, Fla.

CASE NO: 1:18-CV-21733-UU

Stats.

        f.      **_McHUGH's Second Amended Counterclaim – Count III for Payment Bond Claim_**.  For the reasons stated above, McHUGH is found to be a proper claimant against the payment bond, the claim is within the scope of the bond, and McHUGH met its burden as to Count III for payment bond claim.  McHUGH is entitled to recover the principal amount of its claim against WESTCHESTER's payment bond up to the $301,342.00 penal sum of the bond, plus interest, attorney's fees and costs, even to the extent they exceed the penal sum of the bond.  *David Boland, Inc. v. Trans Coastal Roofing Co.*, 851 So. 2d 724, 726 (Fla. 2003); *Old Republic Sur. Co. v. Reischmann*, 713 So. 2d 434, 436 (Fla. 2d DCA 1998).  Attorney's fees are awarded pursuant to sections 713.29, 627.428 and 627.756, Fla. Stats.  This award against the payment bond is in addition to, and not duplicative of, the award against the performance bond.

        4.      **Summary of Conclusions.**  Based on the foregoing findings of fact and conclusions of law, the Court concludes that SALOMON failed to satisfy its burden as to Counts I, II and III of the Complaint and McHUGH has satisfied its burden with respect to its affirmative defenses and Counts I, II and III of its Second Amended Counterclaim.  Accordingly, SALOMON CONSTRUCTION AND ROOFING CORP. shall take nothing from the Defendants, JAMES McHUGH CONSTRUCTION CO. and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA as to Counts I, II and III of the Complaint and shall go hence without delay. TRAVELERS shall be entitled to an award of attorney's fees and costs in amounts to be decided at a subsequent hearing.

        JAMES McHUGH CONSTRUCTION CO. shall recover from SALOMON CONSTRUCTION AND ROOFING CORP. and WESTCHESTER FIRE INSURANCE COMPANY, jointly and severally, the principal sum of $1,211,504.42, plus prejudgment interest thereon at the rate of 5.72% per annum, for a total amount due of $1,316,491.47, plus attorney's fees and costs in amounts to be decided at a subsequent hearing.

        5.      **Submission of Final Judgments.**  Counsel for SALOMON is ordered and directed to submit to the Court in Word format via the division email on or before _____, 2019 a final judgment against SALOMON and WESTCHESTER and in favor of McHUGH and TRAVELERS consistent with the Court's findings of fact and conclusions of law set forth in this Order and with the applicable rules of civil procedure and statutes governing the form and content of final judgments.  Counsel shall provide a courtesy copy of the proposed final judgment to McHUGH's and TRAVELER's counsel prior to submitting it to the Court.

        6.      **Reservation of Jurisdiction.**  The Court reserves jurisdiction over this case to:
        a.      Determine the amount of and award reasonable attorney's fees and court costs; and

        b.      Enter any additional order or judgment that may be necessary, appropriate or equitable.

10

CASE NO: 1:18-CV-21733-UU

DONE and ORDERED at Miami, Florida, this ___ day of _____, 2019.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

Cc: All Counsel of Record

ACTIVE: 11896818_1