**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case Number: 1:18-CV-21733-UU**

SALOMON CONSTRUCTION AND
ROOFING CORP., a Florida corporation,

      Plaintiff,

v.

JAMES McHUGH CONSTRUCTION
CO., a foreign corporation, and
TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA, a
Foreign corporation,

      Defendants.

_____/

JAMES McHUGH CONSTRUCTION CO.,
a foreign corporation,

      Counter-Plaintiff,

v.

SALOMON CONSTRUCTION AND
ROOFING CORP., a Florida corporation,
and WESTCHESTER FIRE INSURANCE
COMPANY, a foreign corporation,

      Counter-Defendants.

_____/

**PLAINTIFF/COUNTER-DEFENDANT, SALOMON CONSTRUCTION AND ROOFING
CORP. & DEFENDANT, WESTCHESTER FIRE INSURANCE CO.'s
JOINT PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW[1]**

---

[1] Undersigned counsel respectfully provide this filing out of an abundance of caution and in response to McHUGH
filing their own version with the Court.  In good faith, undersigned counsel reasonably believe that this Court's
Scheduling Order does not require this filing, *at this time*, since the Parties already submitted a Joint Pretrial
Stipulation. See Scheduling Order, at p. 2: "Joint Pretrial Stipulation, Jury Instructions **or** Proposed Findings of
Fact and Conclusions of Law must be filed by January 25, 2019."  See also: S.D. Fla. L.R. 16.1(k), providing
that proposed findings of fact and conclusions of law **may** be submitted "at the close of evidence or at earlier
reasonable time that the Court directs. . ."  Since no evidence has been presented to the Court and the trial in this

Case No.: 18-CV-21733-UU
Page 2

Plaintiff/Counter-Defendant Salomon Construction and Roofing Corp. ("SALOMON"),
and Counter-Defendant Westchester Fire Insurance Company ("WESTCHESTER") hereinafter
submits this Joint Proposed Findings of Fact & Conclusions of Law, in accordance with this
Court's Scheduling Order and the Local Rules of the United States District Court for the
Southern District of Florida.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I electronically filed the foregoing document with the Clerk
of Court using the CM/ECF system.  I also certify that the foregoing document is being served
on all parties of record identified on this case service list via transmission of Notices of
Electronic Filing generated by CM/ECF this **1 day of February 2019**.

**DANIELS, RODRIGUEZ, BERKELEY,
DANIELS & CRUZ, P.A.**
4000 Ponce De Leon Boulevard, Suite 800
Coral Gables, Florida 33146

By: */s/ Alexander L. Wildman*
ALEXANDER L. WILDMAN, ESQ
Florida Bar No.: 116930
awildman@drbdc-law.com
JORGE L. CRUZ, ESQ.
Florida Bar No.: 590681
jcruz@drbdc-law.com

---

case will not begin for several weeks, it is difficult to predict the potential findings this Court will make.
SALOMON and WESTCHESTER thus provide this document, in good faith, and respectfully request that this
Court allow them to amend this filing at a later juncture, so as to more properly conform the proposed findings
and legal conclusions to the evidence actually presented to the Court at trial.

Case No.: 18-CV-21733-UU
Page 3

## PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW

THIS CASE came before the Court for a non-jury trial on March _____ - _____, 2019 on (1) the Complaint filed in State Court on March 29, 2018 by the Plaintiff, SALOMON CONSTRUCTION AND ROOFING CORP. (hereinafter "SALOMON"), and which was thereafter removed to this Court (hereinafter "Complaint") by the Defendants, JAMES McHUGH CONSTRUCTION CO. (hereinafter "McHUGH") and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA (hereinafter "TRAVELERS"), and 2) McHUGH's Second Amended Counterclaim dated January 3, 2019 [D.E. 071] (hereinafter "the Counterclaim") against SALOMON and WESTCHESTER FIRE INSURANCE COMPANY (hereinafter "WESTCHESTER"), and the parties' respective answers and affirmative defenses thereto.

The Court has considered the Complaint and the Counterclaim, together with the relevant portions of the court file; has heard the testimony presented by the parties and other witnesses; has had the opportunity to observe the demeanor of each witness and assess each witness' credibility; has reviewed the documentary evidence admitted as exhibits; has heard arguments of counsel; has reviewed the parties' written submissions; and has considered the applicable statutory law, rules of procedure and case law. Based on the foregoing, the Court makes the findings of fact and conclusions of law detailed below as to the claims asserted by SALOMON in its Complaint, by McHUGH in its Second Amended Counterclaim, and the affirmative defenses asserted in response to each of those pleadings by the respective Defendants and Counter Defendants.

1. **PROCEDURAL HISTORY.**

Case No.: 18-CV-21733-UU
Page 4

SALOMON's original Complaint was filed in Miami-Dade Circuit Court, Florida's Eleventh Judicial Circuit Court, on or about March 29, 2018.  SALOMON's Complaint alleged a breach of contract against McHUGH in Count I, seeking the sum of $99,972.10 for McHUGH's alleged non-payment for roofing and waterproofing work performed on the construction of the Miami Midtown 5 project in Miami, Florida. Similarly, in Count II SALOMON sought relief against McHUGH for unjust enrichment arising out of the alleged nonpayment for SALOMON's work. Count III was a claim against a statutory payment bond provided pursuant to section 713.23, Fla. Stats., by McHUGH and TRAVELERS, in which SALOMON sought the same amount of $99,972.10 against the bond.

McHUGH and TRAVELERS filed an answer [D.E. 006], in which they denied the allegations of the Complaint, denied any liability to SALOMON, and raised various affirmative defenses. McHUGH also filed a Counterclaim against SALOMON and WESTCHESTER. McHUGH alleged that SALOMON's work was defective, requiring repair and replacement by McHUGH, for which McHUGH sought an amount of damages that was unspecified in the Counterclaim. McHUGH's Counterclaim (initially) consisted of four (4) counts:  Count I for breach of contract against SALOMON; Count II for violation of the Florida Building Code under section 553.84, Fla. Stats against SALOMON; Count III against WESTCHESTER under a common law performance bond; and Count IV was against WESTCHESTER under a common law payment bond WESTCHESTER.

Eventually, McHUGH successfully sought leave to file its Second Amended Counterclaim leaving only a single count as to SALOMON, for breach of contract, and claims against the performance and payment bonds against WESTCHESTER. [D.E. 071]  This was

Case No.: 18-CV-21733-UU
Page 5

McHUGH's operative complaint going into trial, and similarly the initial Complaint [D.E. 01]

was SALOMON's operative complaint going into trial.

2. **FINDINGS OF FACT**.

The Court finds the following facts have been established by competent admissible

evidence or otherwise stipulated to by the parties:

McHUGH was the general contractor on the construction of the Miami Midtown 5

apartment building (the "Subject Property"). McHUGH was retained pursuant to a written

contract with the owner of the Subject Property, Magellan Development Group, LLC, to perform

the construction. In turn, McHUGH sub-contracted with SALOMON, pursuant to a written

contract dated on or about July 14, 2015 (the "Subject Contract") wherein SALOMON agreed to

perform certain specified roofing work on the Project (the "Project"). A true and correct copy of

that written contract was stipulated by the Parties as attached to SALOMON's Complaint in this

action. [D.E. 1]

Subsequent to the Parties execution of the Subject Contract, McHUGH and SALOMON

amended SALOMON's scope of work on the Project through certain change orders, which

notably included certain revisions to SALOMON's roofing work, as well as the inclusion of

additional work, specifically waterproofing work, to be performed by SALOMON.

In 2016, SALOMON began its work on the Project. On or about December 14, 2016,

SALOMON's roofing work under its roofing permit was approved by the City of Miami

Building Department. Subsequent to the completion of SALOMON's work on the Project,

SALOMON was still owed certain sums of money from McHUGH for services rendered. On or

about April 28, 2017, after McHUGH failed to render final payment for amounts due and owing

Case No.: 18-CV-21733-UU
Page 6

under the Subject Contract, SALOMON recorded a Claim of Lien in the Public Records of Miami-Dade County in the amount of $89,972.10.

Thereafter, on September 9-10, 2017 Hurricane Irma hit South Florida.  It is undisputed by the Parties that the hurricane caused damage to the Subject Property.  After the hurricane, McHUGH performed investigations of the Subject Property and became aware of damage to the the roof, as well as damage to the louvers and windows.  McHUGH contends that the roofing damage was the result of defective work by SALOMON, which ultimately gave rise to McHUGH's counterclaim.  McHUGH is separately seeking remedies against two other sub-contractor on the Project, Cailis Mechanical Corp. and United Glass Systems (non-parties), who are allegedly responsible for the damage to the other areas of the property, *i.e.* louvers and windows.

During trial, McHUGH argued that SALOMON failed to install the roof on the Subject Property in conformance with the Subject Contract, and as such, McHUGH was entitled to damages in the amount of the cost of replacing the roof, as well as damages for various other categories of damages, including consulting fees and McHUGH's "general conditions."

### i.   SALOMON's Complaint

Before addressing the facts relevant to McHUGH's Counterclaim for breach of contract against SALOMON, this Court will turn towards the issues at bar in SALOMON's Complaint against McHUGH.

SALOMON's Complaint as to McHUGH contained three counts: Count I (Breach of Contract); Count II (Unjust Enrichment) and Count III (Statutory Bond Pursuant to Fla. Stat. § 713.23) as against McHUGH and McHUGH's surety, TRAVELERS.

### a.   SALOMON Is Owed Its Remaining Contract Balance

Case No.: 18-CV-21733-UU
Page 7

McHUGH, as the general contractor on the Miami Midtown 5 apartment building project, subcontracted with SALOMON, as subcontractor, for the installation of the original roof at Miami Midtown 5.   The base contract sum was $301,342.00.   McHUGH and SALOMON executed three Change Orders (#1-3) taken together amount to $448,499.00, resulting in an undisputed Adjusted Contract Sum of $749,841.00.

At McHUGH's instruction SALOMON proceeded with work outside its original scope of work, including the following:  (a) installation of 465 lightning protection pads ($3,255.00); (b) installation of a depressed slab area ($11,750.00); (c) installation of tapered ISO with 60 mil GAF TPO roofing and all associated wall flashings ($15,950.00); (d) temporary and full repairs to the main roof and assisting with the work of McHUGH's electrician ($2,550.00); (e) locating and repairing roof holes created by others on the 2nd floor roof and re-flashing the wall flashings where vents were moved after SALOMON completed is work ($575.00); (f) repairing damages to the TPO roof created by others after the final cleaning of the roof membrane ($1,800.00); and (g) providing payment and performance bonds ($5,123.00).

While the Change Orders were not executed by McHUGH and SALOMON for these work items, it is undisputed that the work was authorized and approved by McHUGH, and, in some cases, necessitated due to damages to the roof caused by McHUGH's other trades.   The value of these extra work items totals $41,003.00, resulting in an Adjusted Contract Sum of $790,844.00.   SALOMON was also authorized to perform up to $10,000.00 of roof repairs following Hurricane Irma, and it did perform those roof repairs.   It is undisputed that McHUGH paid SALOMON $670,356.90, leaving an unpaid contract balance due SALOMON of $130,487.10.

Case No.: 18-CV-21733-UU
Page 8

> **b.** It Would Be Unjust For McHUGH To Retain The Benefit Of Salomon's Roof Repair Services After Hurricane Irma Without Compensating SALOMON For The Same

On or about September 28, 2017, McHUGH authorized SALOMON to proceed with repairing the roof following Hurricane Irma, in an effort to mitigate damage to the roof and adjacent work. SALOMON did perform emergency roof repair services as instructed and authorized by McHUGH with the full and reasonable expectation of being compensated for the same, and McHUGH knew that SALOMON expected to be paid. By failing to pay SALOMON for the services provided, McHUGH was unjustly enriched in the amount of $10,000.00, and SALOMON is due this amount from McHUGH.

> **c.** SALOMON Is Entitled To Recover Against The Payment Bond Issued by TRAVELERS

Based upon the evidence presented, the Court finds that SALOMON's Final furnishing of its labor and materials at the Project occurred within 90 days of the recording of its Claim of Lien, which was recorded on April 18, 2017. Thereafter, McHUGH transferred the lien to the payment bond by recording a Notice of Bond in the Public Records of Miami-Dade County, Florida. The bond was not recorded before commencement of construction. SALOMON was not served with a copy of the bond until on or about May 4, 2017. SALOMON did submit a Notice of Nonpayment within 90 days of receiving a copy of the bond. The Court finds that SALOMON's Notice of Non-payment was timely. The Court also finds that SALOMON filed its complaint within the one year period provided by §713.23(1)(e), and, therefore, its claim against the bond is timely. Thus, the Court finds that SALOMON's Claim of Lien against the project is valid and SALOMON is owed an unpaid contract balance of $130,487.10 from TRAVELERS.

> **ii.** **McHUGH's Counterclaim:**

Case No.: 18-CV-21733-UU
Page 9

As to SALOMON, McHUGH had solely a breach of contract count at-issue at trial. McHUGH argued that SALOMON failed to install the roof on the Subject Property in conformance with the Subject Contract. Per McHUGH, SALOMON's improper installation caused damages to McHUGH, measured by the amount of the cost to replace the roof, as well as additional damages for investigative consultant's fees and to compensate McHUGH for its staff's expended time (*i.e.* "general conditions"). In addition, McHUGH sought a 10% "management fee" on top of its alleged damages. In total, McHUGH claimed to be entitled to damages valued at approximately $1,228,081.98.

In support of its claim for breach of contract, McHUGH offered photographs and testimony depicting conditions on the Subject Property. McHUGH proffered this evidence as proof of SALOMON's contractual breach. However, McHUGH was unable to meet its burden of proof because SALOMON established that McHUGH had materially breached the Subject Contract and had caused their own damages. Thus, McHUGH has failed to meet its burden of proof that SALOMON materially breached the contract and caused the damages sought.

SALOMON contradicted McHUGH's position by presenting evidence that McHUGH were responsible for their own damages by materially breaching the Subject Contract and failing to properly supervise and coordinate other sub-contractors. SALOMON established that McHUGH had failed to sub-contract for the sealing of overflow drainage holes (scupper openings) on the roof parapet walls. It is undisputed that McHUGH was responsible for sub-contracting the sealing of the scupper openings on the roof parapet wall. It is undisputed that the scupper openings were not sealed. It is also undisputed that the failure to seal the outside of the scupper openings had a detrimental effect upon the functionality and useful life of the roof. SALOMON also produced uncontroverted evidence that the roof installed by SALOMON was

Case No.: 18-CV-21733-UU
Page 10

damaged with holes/punctures caused by other sub-contractors on the Project. The uncontroverted evidence established that these holes/punctures occurred after SALOMON had ceased involvement on the Project. It is similarly undisputed that holes/punctures in the roof had a detrimental effect upon the functionality and useful life of the roof. McHUGH was unable to establish that their damages were not caused by the existence of the holes/punctures or the unsealed scuppers.

In light of the foregoing, this Court was unable to find that McHUGH has failed to present substantial competent evidence that SALOMON materially breached the Subject Contract, nor that SALOMON caused the damages claimed. Rather, the Court finds that McHUGH was as likely, if not more likely, to be the cause of its own damages.

Turning to McHUGH's Counterclaim as to WESTCHESTER, SALOMON's surety, the Court similarly finds that McHUGH's claim fails.

As the evidence has shown, McHUGH failed to render all contractually obligated payments to SALOMON as per the terms of the Subject Contract in the amount of at least $130,487.10, without inclusion of interest. The payment and performance bonds issued by WESTCHESTER were attached to the Subject Contract between SALOMON and MCHUGH as Exhibit G.1, Payment and Performance Bond. The payment and performance bond has a penal sum in the amount of $301,342. However, MCHUGH's Counterclaim sought recovery on both the payment and performance bond, alleging it is entitled to recover twice the penal sum, i.e. $602,684.

It is undisputed that the Dual Obligee Rider in the payment and performance bond states ". . . that the Principal and Surety shall not be liable to all Obligees in the aggregate in excess of the penal sum of ($301,342)." However, the payment bond is conditioned on a failure of

Case No.: 18-CV-21733-UU
Page 11

SALOMON to "make payments to all persons supplying labor and material" for a defined "Subcontract." It is undisputed that SALOMON paid all persons supplying it with labor and materials on the Project. And, by the terms of the Dual Obligee Rider, only persons supplying labor and material to WESTCHESTER's principal, i.e. SALOMON, have an independent action upon the payment bond in their own name.

Here, MCHUGH is entitled to recover on the performance bond only to the extent that WESTCHESTER's principal, SALOMON, is found to have defaulted in performance at the project and failed to remedy such default. However, the evidence at trial has established that SALOMON did not default under the terms of the Subject Contract.

Accordingly, since this Court finds that McHUGH failed to meet its burden of proof with regards to its claim for Breach of Contract against SALOMON, McHUGH's claim against WESTCHESTER similarly fails as well, insofar as that claim hinges upon the underlying contention that SALOMON failed to perform pursuant to the Subject Contract.

### 3. **CONCLUSIONS OF LAW.**

Based upon the Court's review of the relevant authorities presented, and in light of the Findings of Fact stated above, the Court makes the following conclusions of law:

### i. **SALOMON'S Complaint**

#### a. Count I (Breach of Contract)

Although the Subject Contract required change orders to be in writing, the undisputed facts show that the Parties established a course of conduct whereby changes were authorized and the work performed before McHUGH issued a written change order to SALOMON. SALOMON was paid for that change order work. A contracting party may waive, either orally

Case No.: 18-CV-21733-UU
Page 12

or by conduct, a stipulation in a construction contract providing that alterations or extra work must be authorized by a written change order. *Doral Country Club, Inc. v. Curcie Brothers, Inc.*, 174 So.2d 749, 750-751 (Fla. 3rd DCA 1965); *Pan American Engineering Co., Inc. v. Poncho's Construction Co.*, 387 So.2d 1052, 1053 (Fla. 5th DCA 1980).

Based on the evidence received, McHUGH waived the requirement for a written change order for (a) installation of 465 lightning protection pads ($3,255.00); (b) installation of a depressed slab area ($11,750.00); (c) installation of tapered ISO with 60 mil GAF TPO roofing and all associated wall flashings ($15,950.00); (d) temporary and full repairs to the main roof and assisting with the work of McHUGH's electrician ($2,550.00); (e) locating and repairing roof holes created by others on the 2nd floor roof and re-flashing the wall flashings where vents were moved after SALOMON completed is work ($575.00); (f) repairing damages to the TPO roof created by others after the final cleaning of the roof membrane ($1,800.00); and (g) providing payment and performance bonds ($5,123.00). The value of these extra work items totals $41,003.00.

The evidence presented at trial established by a preponderance of evidence that SALOMON substantially performed the work set forth in the change orders at bar.

Accordingly, because SALOMON performed the work in accordance with the Subject Contract, and it is therefore entitled to payment. When a contractor has substantially performed under its contract, it is entitled to an award for the contract price. *Casa Linda Tile & Marble Installers, Inc. v. Highlands Place 1981, LTD.*, 642 So. 766 (Fla. 4th DCA 1994); *Ocean Ridge Development Corp. v. Quality Plastering, Inc.*, 247 So.2d 72 (Fla. 4th DCA 1971).

Based upon the evidence received, this Court finds that McHUGH breached the Subject Contract with SALOMON by failing to render payment for the authorized change orders.

Case No.: 18-CV-21733-UU
Page 13

As such, this Court finds that SALOMON is entitled to judgment on its breach of contract count, and as such SALOMON is due the amount of the undisbursed contract balance of $130,487.10, which includes $10,000.00 for the repair work performed by SALOMON after Hurricane Irma, with authorization from McHUGH.

Similarly, because the Parties do not dispute that the Subject Contract contains a prevailing party attorney's fees provision, the Court further finds that SALOMON shall be deemed the prevailing party on this count. Accordingly, this Court finds that SALOMON is entitled to recover reasonable attorney's fees and costs as a result of McHUGH's breach.

### b. Count II (Unjust Enrichment)

In accordance with the Court's findings above, the Court similarly finds that SALOMON is entitled to judgment for unjust enrichment.

Competent evidence was presented that SALOMON did perform emergency repair work after Hurricane Irma at the instruction of McHUGH. To establish a prima face case under unjust enrichment, it must be shown that a benefit was conferred upon McHUGH with McHUGH's knowledge, McHUGH accepted and retained the benefit conferred, and the circumstances are such that it would be inequitable for McHUGH to retain the benefit without paying the value thereof to SALOMON. *Ruck Brothers Brick, Inc. v. Kellogg & Kimsey, Inc.*, 668 So.2d 205 (Fla. 2nd DCA 1995).

Based upon the evidence received, SALOMON did perform emergency repair work, which benefited McHUGH, with McHUGH's knowledge. McHUGH accepted and retained the benefit conferred, and it would be unjust to allow McHUGH to retain that benefit without paying the reasonable value thereof, which totals $10,000.00.

### c. Count III (Breach of Payment Bond)

Case No.: 18-CV-21733-UU
Page 14

In accordance with the Court's findings above, the Court finds that SALOMON contracted directly with McHUGH for its work at the Project.  SALOMON last performed its scope of work at the project, excluding punch list work, within 90 days of the recording of its Claim of Lien, which was recoded against the project on April 18, 2017.  Thereafter, McHUGH transferred the lien to the payment bond by recording a Notice of Bond in the Public Records of Miami-Dade County, Florida.  TRAVELERS was the Surety on the payment bond.  The bond was not recorded before the commencement of construction.  SALOMON did provide a Notice of Nonpayment within 90 days of having been served with a copy of the bond, as provided by section 713.23(1)(d), Fla. Stats.  SALOMON also filed this lawsuit on March 28, 2018, or within the one year period provided by section 713.23(1)(e), Fla. Stats.

Based upon the evidence received, SALOMON is due the amount of the undisbursed contract balance of $130,487.10, which includes $10,000.00 for the repair work performed by SALOMON after Hurricane Irma, with authorization from McHUGH.  SALOMON, having complied with all conditions precedent to its recovery on the payment bond provided by TRAVELERS is entitled to recovery $130,487.10, under the payment bond provided by TRAVELERS.

### ii.  McHUGH's Counterclaim

#### a.  Count I (Breach of Contract Claim as to SALOMON)

In order to prevail on a claim for breach of contract, McHUGH must prove: (1) a valid contract; (2) a material breach; and (3) damages. *Friedman v. New York Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008). This general rule was enunciated by various Florida district courts of appeal. See *Murciano v. Garcia*, 958 So. 2d 423, 423-24 (Fla. 3d DCA 2007); *Abbott Laboratories, Inc. v. General Elec. Capital*, 765 So. 2d 737, 740 (Fla. 5th DCA 2000); *Mettler,*

Case No.: 18-CV-21733-UU
Page 15

*Inc. v. Ellen Tracy, Inc.*, 648 So. 2d 253, 255 (Fla. 2d DCA 1994); *Knowles v. C.I.T. Corp.*, 346 So. 2d 1042, 1043 (Fla. 1st DCA 1977).

In general, the damages recoverable from a breach of contract are those which naturally flow from the breach at issue. *Sharick v. Se. University of the Health Sciences, Inc.*, 780 So.2d 136, 139 (Fla. 3d DCA 2000) ("Damages recoverable by a party injured by a breach of contract are those which would naturally result from the breach and can reasonably be said to have been contemplated by the parties at the time the contract was made.").

The doctrine of substantial performance applies when the variance from the contract specifications is inadvertent or unintentional and unimportant so that the work actually performed is substantially what was called for in the contract. *Lockhart v. Worsham*, 508 So.2d 411, 412 (Fla. 1st DCA 1987). "Substantial performance is performance 'nearly equivalent to what was bargained for.'" *Strategic Resources Grp., Inc. v. Knight-Ridder, Inc.*, 870 So.2d 846, 848 (Fla. 3d DCA 2003).

As set forth above, McHUGH presented evidence at trial to the effect that SALOMON breached the Subject Contract. However, McHUGH has failed to present evidence establishing that the claimed breaches are material in nature. Specifically, McHUGH has failed to present evidence that the damages sought are the natural result of SALOMON's alleged breach. Rather, to the contrary, this Court was presented with substantial evidence that McHUGH caused its own damages by failing to properly supervise and coordinate the Project, by failing to sub-contract all essential sealant work and by allowing damage to the roof after SALOMON had completed its work. Thus, this Court finds that McHUGH has failed to meet its burden of proof in establishing that the claimed damages are the natural result of SALOMON's alleged breach.

Case No.: 18-CV-21733-UU
Page 16

To the contrary of McHUGH's position, this Court finds that SALOMON substantially performed its obligations under the Subject Contract.  This conclusion is supported by competent admissible evidence, including, in pertinent part, the fact that McHUGH accepted SALOMON's work, McHUGH rendered payment to SALOMON for that work, and the fact that SALOMON's work was approved by the City of Miami's Building Department.

Finally, the Court also concludes that McHUGH has also failed to produce competent evidence to prove its claimed damages.  McHUGH was unable to present evidence as to whether SALOMON's roof failed to meet the uplift requirements.  Similarly, McHUGH was unable to present evidence that the entire roof needed to be replaced.  It is axiomatic that McHUGH cannot recover for damages that it has failed to prove.  Thus, McHUGH's claim fails because McHUGH has failed to establish its damages.

Thus, in light of the foregoing, McHUGH's claim for breach of contract against SALOMON fails as a matter of law and SALOMON is entitled to judgment in its favor.

Moreover, because the Parties do not dispute that the Subject Contract contains a prevailing party attorney's fees provision, the Court further finds that SALOMON be deemed the prevailing party.  Accordingly, this Court finds that SALOMON is entitled to recover reasonable attorney's fees and costs as a result of McHUGH's failure to prevail on this claim.

b.  Counts II & III (Breach of Performance and Payment Bond as to WESTCHESTER)

As explained above, McHUGH's claim for breach of contract as to SALOMON fails.  Thus, this Court similarly finds that McHUGH's claims for breach of performance bond and breach of payment bond as to SALOMON's surety, WESTCHESTER, also fails.

"Although the actual expenses paid under each bond are often similar, the payment bond and performance bond remain distinguished by the different obligations assumed by the surety."

Case No.: 18-CV-21733-UU
Page 17

11 Couch on Ins. § 163.10.

Florida courts recognize "the traditional distinction between payment and performance bonds, which serve different purposes and give rise to different obligations[.]"  Allegheny Casualty Company v. Archer-Western/Demaria Joint Venture III, et al., Case no. 8:13-cv-128-T-24-TGW, 2014 WL 10815507 (M.D. Fla. June 16, 2014).

"A [surety] bond is a contract, and, therefore, a bond is subject to the general law of contracts." *Am. Home Assur. Co. v. Larking Gen. Hosp. Ltd.,* 593 So.2d 195, 197 (Fla. 1992). "The intent of the parties to the contract should govern the construction of a contract.  . . . To determine the intent of the parties, a court should consider the language in the contract, the subject matter of the contract, and the object and purpose of the contract." *Id*.  As "a general rule, a surety's liability on a bond is determined strictly from the terms and conditions of the bond agreement." *Arch Ins. Co. v. John Moriarty & Associates of Florida, Inc.*, 15-22403-CIV, 2016 WL 7324144 (S.D. Fla. Dec. 12, 2016)  (*citing CC-Aventura, Inc. v. Weitz Co., LLC,* 492 Fed. Appx. 54 (11th Cir. 2012) (unpublished).  In interpreting contracts, Florida courts adopt the construction of the contract that is reasonable and avoid absurd results.  *See Paddock v. Bay Concrete Indus., Inc.*, 154 So. 2d 313, 316 (Fla. Dist. Ct. App. 1963).

An "obligee under a . . . payment bond is not entitled to payments for labor and material paid by the obligee who completes the contract after the contractor's default." *Ribeira & Laurenco Concrete Constr. v. Jackson Healthcare Assocs.*, 254 N.J. Super. 445, 451, 603 A.2d 976, 979 (N.J. Super.Ct. App.Div. 1992).  A payment bond "is limited in coverage to the protection of laborers and materialmen, it . . . does not indemnify the obligee with respect to labor and materials purchased and used by the obligee in completing the contract after the contractor's default." 11 Couch on Ins. § 165:15 (3d ed. 1995) (footnote and citation omitted).

Case No.: 18-CV-21733-UU
Page 18

A payment bond ". . . by definition does not indemnify the obligee with respect to labor and materials used by the obligee in completing the contract after the contractor's default."  13 Couch, *Cyclopedia of Ins. Law* 2d § 47:232 (1982), at 373.  A payment bond is not intended "to guarantee payment of [the prime contractor/obligee's] labor and materials used to complete the project after [the subcontractor/principal] stopped performing."  *See Allegheny Cas. Co. v. Archer-Western/Demaria Joint Venture III*, No. 8:13-cv-128-T-24-TGW, 2014 U.S. Dist. LEXIS 185087, at 13 (M.D. Fla. June 16, 2014).

Here, as explained above, the Court has found that McHUGH's claim for breach of contract against SALOMON fails.  Thus, it logically follows that McHUGH's claim for breach of the performance bond also fails because McHUGH has failed to establish that SALOMON defaulted under the Subject Contract.

Moreover, the Court has also determined that the payment bond language does not authorize McHUGH to make a claim upon the payment bond, as the payment bond's reference to "all labor and material used or reasonably required for use in the performance of the contract," is "not intended to extend the coverage to protect the obligee of the performance bond, but only to protect the surety against extravagant and unnecessary use of labor and materials on the part of the contractor or the claimant."  13 Couch, *Cyclopedia of Ins. Law* 2d § 47:232 (1982), at 373.

Similarly, the only situation in which an obligee may recover on a payment bond is when it is subrogated to the rights of the principal's subcontractors and suppliers, through payment by the obligee to the principal's subcontractors and suppliers.  11 Couch on Ins. § 165:14 (3d ed. 1995).  No such subrogation issues are present here. As such, McHUGH's claim under the payment bond also fails.

Turning to attorney's fees under the bond claims, MCHUGH is not entitled to recover its

Case No.: 18-CV-21733-UU
Page 19

attorney fees for its claim against the bond because, in construing the statutes relied upon by MCHUGH, Florida "courts have established that a prevailing insured is one who obtains a judgment in its favor and against an insurer in an amount which is greater than any offer of settlement previously tendered by the insurer." *Danis Indus. Corp. v. Ground Imp. Techniques, Inc.*, 629 So. 2d 985, 987–88 (Fla. Dist. Ct. App. 1993)*, approved sub nom. Danis Indus. Corp. v. Ground Improvement Techniques, Inc.*, 645 So. 2d 420 (Fla. 1994).  Here, the record reflects that McHUGH has failed to recover an amount larger than the offer of settlement tendered.

The attorneys fees, if any, must be reduced by considering the "results obtained" principle set forth in *Florida Patient's Compensation Fund v. Rowe*, 472 So.2d 1145 (Fla.1985).  Under *Rowe*, a court may reduce an attorney's fees award based upon the "results obtained" if a "party prevails on a claim or claims for relief, but is unsuccessful on other unrelated claims." *Id*. at 1151.  Under these circumstances, "the trial judge must evaluate the relationship between the successful and unsuccessful claims and determine whether the investigation and prosecution of the successful claims can be separated from the unsuccessful claims." *Id. See also Zaremba Florida Co. v. Klinger*, 550 So.2d 1131 (Fla. 3d DCA 1989).  MCHUGH has the burden of either allocating its attorney's fees based on its successful claims, which it did not do.  *Danis Indus. Corp. v. Ground Imp. Techniques, Inc*., 629 So. 2d 985, 987–88 (Fla. Dist. Ct. App. 1993), approved sub nom. Danis Indus. Corp. v. Ground Improvement Techniques, Inc*., 645 So. 2d 420 (Fla. 1994)

Thus, because McHUGH has failed to succeed in its claims against SALOMON, necessarily it is not entitled to an award of attorney's fees under its bond claims against TRAVELERS.

**4.   SUMMARY OF CONCLUSIONS**.

Case No.: 18-CV-21733-UU
Page 20

Based upon the foregoing findings and conclusions of law, the Court finds that McHUGH has failed to satisfy its burden of proof that SALOMON breached the Subject Contract. Similarly, McHUGH's claims under the performance bond and payment bond as against SALOMON's surety, TRAVELERS, also fails.    Accordingly, JAMES McHUGH CONSTRUCTION CO. shall take nothing from the Plaintiff/Counter-Defendants, SALOMON CONSTRUCTION & ROOFING CORP. and WESTCHESTER FIRE INSURANCE CO. on Counts I, II and III of McHUGH's Counterclaim.

SALOMON has satisfied its burden of proof on its breach of contract and breach of payment bond claims as against JAMES McHUGH CONSTRUCTION CO. and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA.   Accordingly, SALOMON shall be entitled to recover the principal sum of  $130,487.10 on Count I and III of SALOMON's Complaint, as against McHUGH and TRAVELERS jointly and severally, plus pre-judgment interest at 6.33% per annum, for a total amount of $137,744.92 ($120,487.10 principal + $6435.79 interest), calculated as follows:

$10,000 x .0633=$633

There is one year of interest from 10/13/17 to 10/13/18, so $633.

/365= $1.7342465 daily interest

x 109 days = $189.03

$189.03+$633 =**$822.03**

$120,487.10 x .0633 =  $7626.8334

/365 days = 20.895433 daily interest

x 308 days = **$6435.79**

$6435.79 + 822.03 = $7257.82  Total interest owed through January 30, 2019.

Case No.: 18-CV-21733-UU
Page 21

Interest continues at the daily rates noted above through the date of judgment. That amount is in addition to this Court's award of reasonable prevailing party attorney's fees pursuant to the provisions of the Subject Contract, to be determined at a subsequent hearing.

In the alternative, with respect to the $10,000 claim in Count II, SALOMON has also satisfied its burden of proof on its unjust enrichment claim against JAMES McHUGH CONSTRUCTION CO. As such, SALOMON shall also be entitled to an award of $10,000.00 for Count II, plus pre-judgment interest at 6.33% per annum, for a total of $10,822.03 ($10,000 principle and $822.03 interest), calculated as follows:

$10,000 x .0633=$633

There is one year of interest from 10/13/17 to 10/13/18, so $633.

/365= $1.7342465 daily interest from 10/13/18 to 1/30/2019

x 109 days = $189.03

$189.03 + 633 = $822.03

5. **SUBMISSION OF FINAL JUDGMENT**.

Counsel for McHUGH is ordered and directed to submit to the Court in Word format via the division email on or before _____, 2019 a final judgment against McHUGH and TRAVELERS and in favor of SALOMON and WESTCHESTER consistent with the Court's findings of fact and conclusions of law set forth in this Order and with the applicable rules of civil procedure and statutes governing the form and content of final judgments. Counsel shall provide a courtesy copy of the proposed final judgment to SALOMON and WESTCHESTER's counsel prior to submitting it to the Court.

6. **RESERVATION OF JURISDICTION.**

The Court reserves jurisdiction over this case to:

Case No.: 18-CV-21733-UU
Page 22

      a. Determine the amount of and award reasonable attorney's fees and court costs; and

      b. Enter any additional order or judgment that may be necessary, appropriate or equitable.

DONE and ORDERED at Miami, Florida, this ____ day of _____, 2019.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

Cc:  All Counsel of Record